**E-FILED on** _____12/5/05_____

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JACK REINKE,<br><br>            Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>            Defendant. | No. C-04-02279 RMW<br><br>ORDER REMANDING CASE |

## I. INTRODUCTION

Plaintiff Jack Reinke brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of the Commissioner's decision denying his claim for a period of disability insurance benefits. The parties have filed cross-motions for summary judgment. For the reasons set forth below, the court remands the case.

On July 24, 2000, Reinke filed his claim for disability insurance benefits, which was denied initially and upon reconsideration. TR:57, 69-72. Reinke alleged that he has been unable to work since July 1, 1993. TR:69. At a July 22, 2002 hearing before Administrative Law Judge ("ALJ") Sandra Rogers, Reinke amended his onset date of disability to May 13, 1998. TR:9-15. ALJ Rogers rendered an unfavorable decision on August 14, 2002. *Id.* On October 31, 2002, the Appeals Council declined Reinke's request for review, making ALJ Rogers' decision the final decision of the Commissioner. TR:5. Reinke appealed to this court.

On April 3, 2003, pursuant to the parties' stipulation, this court remanded Reinke's case to address his "subjective complaints of an inability to ambulate in connection with the finding that he could do past

ORDER REMANDING CASE–04-02279 RMW
SHL

1  relevant work." TR: 289-291.  ALJ Brenton Rogozen held a new hearing on December 11, 2003.  He
2  rendered another unfavorable decision on February 27, 2004.  TR:255-261, 294.  The ALJ's decision
3  became the final decision of the Commissioner when the Appeals Council affirmed the denial on April 18,
4  2004.  TR:248.

## II.  STATEMENT OF FACTS

6  Reinke was born on January 4, 1943.  He graduated from high school, attended two years of
7  college, and worked as a car salesman.  TR:69, 75, 80.  Reinke contends that he has been disabled since
8  May 13, 1998 because of pain and immobility resulting from spinal stenosis.  TR:74.  Reinke's date last
9  insured for purposes of disability insurance benefits was December 31, 1998.  TR:83.

10  Dr. Karl Johsens began treating Reinke in May 1999.  TR:233.  On June 19, 2002 Dr. Johsens
11  issued a report explaining that although Reinke probably had severe pain in January 22, 1997, a treadmill
12  stress test on Feburary 10, 1997 demonstrated that he did not have spinal stenosis on that date.  *Id.*  Dr.
13  Johsens noted that Reinke had complained of pain on May 13, 1998, November 16, 1998, and nearly
14  every medical visit thereafter.  *Id.*  Admitting that "it [was] difficult to assess when [Reinke's pain] became
15  chronic and disabling," Dr. Johsens nonetheless concluded that it was "likely that Mr. Reinke's pain from
16  spinal stenosis became chronic and significant and probably disabling sometime between 2/10/97 and
17  5/13/98."  *Id.*

18  Dr. Neena Madireddi first examined Reinke on September 16, 2000 at the request of the ALJ.
19  TR:116.  She noted that Reinke claimed to have developed back pain about seven years earlier.  *Id*.  She
20  commented that he was obese, had difficulty squatting, and reported "some discomfort with lumbar range of
21  motion."  TR:117.  She concluded that he could lift and carry 20 points occasionally and 10 pounds
22  frequently, and could stand, walk, and sit for up to six hours in a full workday.  TR:118.

23  Dr. Madireddi reexamined Reinke in the fall of 2003.  On September 8, 2003, she stated that he
24  still reported significant pain. TR:378.  She noted that his x-rays revealed degenerative disc disease at L4-
25  L5 and L5-S1 with moderate osteroarthiritis.  TR: 379.  She concluded that he could lift and carry 10
26  pounds occasionally and five pounds frequently.  TR:380.  She also determined that he could stand and
27  walk for four hours and sit for six hours cumulatively.  *Id*.  On November 21, 2003 she reviewed his
28  medical file and concluded that he has "a reduced functional capacity consistent with sedentary work most

ORDER REMANDING CASE–04-02279 RMW
SHL                                                                2

1  likely beginning around May 13, 1998." TR:388.  She explained that her opinion had changed since her

2  examination in 2000 because his condition had deteriorated and she had reviewed further radiographic

3  studies.  *Id.*

4        At the administrative hearing before the ALJ, vocational expert Scott Simon and Reinke both

5  testified.  Simon explained that the position of car salesman is a light, semi-skilled job and that Reinke has

6  no skills from his past, relevant work that would be transferable to a sedentary job.  TR:84, 287.  Reinke

7  testified that beginning in May of 1998, he suffered from severe pain in the lower back and lower

8  extremities.  TR:259.  Reinke stated that he was unable to sit or stand for a prolonged period of time and

9  needed a cane as an assistive device for ambulation.  TR:259.

10        In determining whether Reinke was disabled, the ALJ incorporated by reference the evaluation of

11  evidence in ALJ Rogers' decision but not the inference or findings of fact therefrom.  Such evidence

12  included Dr. Johsens' report and a November 19, 1999, MRI of the thoracic and lumbar spine showing

13  "moderate to marked spinal stenosis involving L3-4 secondary to spondyolitic disease." TR:12-15, 169,

14  258-261.  In addition, the ALJ had before him treatment records from Kaiser Permanente and the reports

15  of Dr. Madireddi from September 8 and November 21, 2003.  TR:299-377.

16  ### III.  LEGAL STANDARDS

17        To be eligible for Social Security disability benefits, the claimant must be disabled.  "A claimant

18  bears the burden of proving that an impairment is disabling." *Miller v. Heckler*, 770 F.2d 845, 849 (9th

19  Cir. 1985).  Disability is defined as "inability to engage in any substantial gainful activity by reason of any

20  medically determinable physical or mental impairment which can be expected to result in death or which has

21  lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

22  423(d)(1)(A).  An impairment for purposes of this definition "results from anatomical, physiological, or

23  psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory

24  diagnostic techniques." 42 U.S.C. § 423(d)(3).  In addition, a person is disabled only if the impairment is

25  so severe as to preclude not only performance of his previous work, but also, considering his age,

26  education, and work experience, performance of "any other kind of substantial gainful work which exists in

27  the national economy." 42 U.S.C. § 423(d)(2)(A).

28

ORDER REMANDING CASE–04-02279 RMW
SHL                                                                          3

The district court's review of the ALJ's decision is limited.  The Secretary's determination denying benefits will be upheld "if it is supported by substantial evidence and is based on the proper legal standards."  *See* 42 U.S.C. § 405(g); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993) (citing *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990)).  "The decision will be set aside, however, if the proper legal standards were not applied in weighing the evidence and making the decision even though the findings are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978)).  The Ninth Circuit defines "substantial evidence" as follows:

> Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  To determine whether substantial evidence supports the ALJ's decision, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.  Where the evidence is susceptible to more than one rational interpretation, we must uphold the Commissioner's decision.

*Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (internal citations and quotation marks omitted).

## IV.  DISCUSSION

### A.    The Five-Step Sequential Evaluation of Disability

The Commissioner has established a five-step sequential evaluation process to follow in a disability case.  20 C.F.R. §§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  If so, the ALJ will find that the claimant is not disabled, and the claim will be denied.  *Id.* §§ 404.1520(b), 416.920(b).  Second, the ALJ determines whether the claimant has a severe impairment or combination of impairments that significantly limit him from performing basic work activities.  If not present, the ALJ will find that the claimant is not disabled, and the claim will be denied.  *Id.* §§ 404.1520(c), 416.920(c).  Third, if the claimant is suffering from such an impairment, the ALJ compares the impairment with those in the Listing of Impairments, and if the impairment "meets or equals" an impairment on the Listing, disability is presumed and benefits are awarded.  *Id.* § 404, Subpart P, App. 1; §§ 404.1520(d), 416.920(d).  If not, the ALJ must determine, as a fourth step, whether the claimant has sufficient "residual functional capacity" to perform his past relevant work.  If the claimant has sufficient residual functional capacity, the ALJ will find that the claimant is not disabled, and the claim will be denied.  *Id.* §§ 404.1520(e), 416.920(e).  Otherwise, if the claimant meets his burden of showing that he is unable to perform past relevant work, he has established a prima facie case of disability.  *See  Gamer v. Sec'y of*

*Health and Human Services*, 815 F.2d 1275, 1278 (9th Cir. 1987).  In step five, the burden shifts to the Commisioner to prove that the claimant, based on his age, education, work experience, and residual functional capacity, can perform other substantial gainful work.  *Id.* §§ 404.1250(f), 416.920(f); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987).

### B. The ALJ's Findings

In order to obtain disability benefits, Reinke must demonstrate that he was disabled prior to his date last insured: December 31, 1998.  The ALJ determined that Reinke was not disabled prior to December 31, 1998 because he had the residual capacity to perform past, relevant work.  TR:260.  In determining that Reinke was not disabled, the ALJ found that Reinke (1) has "relevant work experience as a car salesperson, which requires light, skilled work"; (2) had the ability to lift and carry up to 10 pounds frequently and 20 pounds occasionally, stand and walk up to six hours in an eight hour workday, and sit for six hours in an eight hour workday prior to December 31, 1998; and (3) suffers from a back disorder and degenerative joint disease of the hips, which are severe but do not constitute an impairment listed in or medically equal to one in Appendix 1, Subpart P, Regulations No. 4.  TR:260-261.

The ALJ reasoned that Reinke's impairments could reasonably be expected to produce some of the pain and other symptoms he alleged.  TR:259.  The ALJ also stated that the objective medical evidence after 1999 might support Reinke's testimony.  *Id*.  Nonetheless, the ALJ found that the objective medical findings and course of treatment prior to December 31, 1998 did not support the level of severity described by Reinke.  *Id*.

The ALJ determined that Reinke's allegations of disabling pain were not credible because of the discrepancies between his assertions regarding the intensity, persistence, and limiting effects of his symptoms and information contained in the reports of the treating and examining physicians.  *Id*.  In explaining why Reinke's allegations of disabling pain were not credible, the ALJ noted that from May 1998 through December 1998, only two treatments records—dated May 13, 1998 and November 16, 1998—contained complaints of back and hip pain.  TR:260.  The ALJ observed that these records did not contain any detailed examinations or findings and that Reinke only first received lumbar epidural injections in mid-1999.  *Id*.  The ALJ concluded that "the minimal abnormal objective findings of the hips or lower extremities are inconsistent with Reinke's allegation of an inability ambulate for a total of 6 hours in an 8-

1  hour workday." *Id*. Lastly, the ALJ pointed out the absence of an x-ray or MRI scan Reinke's hips or
2  lower extremities and the absence of reported continuous side effects of medication. TR:260.

3        **C.**     **Failure to Consider Dr. Madireddi's Reports**

4       "Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat
5  the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining
6  physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v.*
7  *Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). An ALJ must provide "clear and convincing" reasons for
8  rejecting the uncontradicted opinion of an examining physician. *See id*.

9       Here, it is undisputed that Dr. Madireddi examined Reinke twice: once in 2000 and once in 2003.
10 Although this was after Reinke's date last insured, "medical evaluations made after the expiration of the
11 claimant's insured status are relevant to an evaluation of the pre-existing condition." *Smith v. Bowen*, 849
12 F.2d 1222, 1225 (9th Cir. 1988). In fact, "[a] diagnosis even several years after the actual onset of the
13 impairment is entitled to significant weight." *Svatos v. Apfel*, 44 F. Supp. 2d 1113, 1119 (D. Or. 1999).
14 In 2000, Dr. Madireddi concluded that Reinke was capable of light work. TR:118. In 2003, she
15 determined that he would only have been capable of sedentary work on May 13, 1998. TR:388. If ALJ
16 Rogozen had accepted this last statement, Reinke would be disabled under Rule 201.06 of "the grids":
17 certain *per se* rules of disability codified in 20 C.F.R. Part 404, Subpart P, Appendix 2. Nevertheless,
18 ALJ Rogozen did not mention Dr. Madireddi's opinions at all. Although ALJ Rogozen did incorporate by
19 reference ALJ Rogers' "evaluation of the evidence," ALJ Rogers also does not mention Dr. Madireddi's
20 reports. Moreover, because ALJ Rogozen did not incorporate by reference ALJ Rogers' "inferences or
21 findings of fact," even if ALJ Rogers *did* mention Dr. Madireddi's reports, ALJ Rogozen has provided no
22 independent, reasoned explanation of why he disregarded them. Because ALJ Rogozen provided no
23 reasons for rejecting Dr. Madireddi's reports, he erred. *See Baxter v. Sullivan*, 923 F.2d 1391, 1396

(9th Cir.1991) (reversing ALJ's decision when "[t]here is no mention of Dr. Christiansen anywhere in the ALJ's five-page opinion—not even in the ALJ's summary of the medical evidence").

### V.  ORDER

For the foregoing reasons, the court remands the case for the ALJ to consider Dr. Madireddi's opinions under sentence four of section 405(g).  If the ALJ determines that Dr. Madireddi's opinions are not credible, he must state why.  However, if the ALJ finds that Dr. Madireddi's opinions are credible, and that Reinke is limited to sedentary work, he must call a medical expert to determine the onset date of Reinke's disability.  *See* S.S.R. 83-20 ("At the hearing, the administrative law judge . . . should call on the services of a medical advisor when onset must be inferred.").

DATED:       12/2/05                                      /s/ Ronald M. Whyte
                                                                          RONALD M. WHYTE
                                                                          United States District Judge

**Notice of this document has been electronically sent to:**

**Plaintiff:**
Terry LaPorte         tlaporte@ix.netcom.com

**Counsel for Defendant(s):**
Nancy Lisewski        nancy.lisewski@ssa.gov
Sara Winslow          sara.winslow@usdoj.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      12/5/05                                    DOH
                                                    **Chambers of Judge Whyte**